UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CHASITY CONGIOUS, by and through her Guardian, Kimberly Hammond, on behalf of Herself and as Mother and Next Friend of Z.C.H., Deceased, | § § § § § § |
| Plaintiff, | §  Civil Action No. 4:22-cv-00092-O |
| v. | § § § |
| AARON IVY SHAW, | § § § |
| Defendant. | § |

**MEMORANDUM OPINION & ORDER**

Before the Court are Plaintiff's Motion for Relief from Judgment (ECF No. 92), Brief in Support (ECF No. 93), and Appendix (ECF No. 94), filed on April 2, 2024; Defendant's Response (ECF No. 97), filed on April 23, 2024; and Plaintiff's Reply (ECF No. 98) and Appendix (ECF No. 99), filed on May 7, 2024. Having considered the briefing and the applicable law, the Court **GRANTS** Plaintiff's request for reconsideration.

**I.    BACKGROUND**[1]

   **A.  Factual Background**

This case arises from the tragic death of a baby girl born to Plaintiff Chastity Congious ("Plaintiff" or "Congious") in a prison cell. Congious suffers from various psychiatric diagnoses, including schizoaffective disorder, bipolar type, psychosis, schizophrenia, mood disorder, hallucinations, delusions, suicidal ideations, prior suicide attempts and self-harm, anxiety disorder,

---

[1] The facts are taken from Plaintiff's Amended Complaint (ECF No. 32), as recited in the Court's March 31, 2023 Memorandum Opinion and Order (ECF No. 61).

1

adjustment disorder, and intellectual disability. She also has a family history of mental health and behavioral disorders. At the time of her daughter's death, Congious was twenty-one years old.

On January 15, 2020, Congious suffered a mental health crisis while four months pregnant. Due to concerns about likely self-harm, Congious's family called the Fort Worth Police Department to involuntarily commit her to JPS Hospital. Rather than take Congious to JPS Hospital, Officer David Nguyen arrested Congious for simple assault. Because Congious was already on probation for a prior unrelated offense, she was denied bond and placed in Tarrant County Jail on a probation hold.

While in Tarrant County Jail, Congious's condition deteriorated due to regular solitary confinement and limited human interaction. Most of this limited contact with other people came in the form of receiving treatment from various health professionals, who reported that Congious was suicidal and often unable to comprehend her pregnant state. By mid-May of 2020, Congious was nonverbal, incommunicative, and had not made a sound in weeks. Despite her worsening mental health condition, routine prenatal checkups consistently revealed that Congious's baby was in good health.

As the end of Congious's pregnancy approached, a nurse reported that she may not recognize what a contraction is. By week 37 of the pregnancy, Dr. Melanie Carter conducted a routine obstetrics exam, reporting that Congious did not respond to questions, would not be able to express her symptoms, and may not recognize when she went into labor. Because of these risks, Dr. Carter recommended that Plaintiff should undergo an induced labor. Dr. Aaron Shaw ("Defendant" or "Dr. Shaw")—then-medical director of Tarrant County Jail and overseeing all of Congious's health care—did not immediately act on Dr. Carter's recommendation to induce labor. Instead, Dr. Shaw was responsible for Congious's continued solitary confinement. Dr. Shaw also

2

elected not to transfer Congious to a medical facility or afford her around-the-clock care, monitoring, and supervision to mitigate against the pregnancy risks due to her psychological condition.

Shortly after her last check-up with Dr. Carter, Congious went into labor on the morning of May 17, 2020. After eating breakfast, Congious's stomach began to hurt and she thought that she needed to use the bathroom. When using the bathroom did not relieve her abdominal pain, Congious banged on the window of her cell for help. At that time, blood from Plaintiff's labor was visible on the toilet seat. Although two correctional officers were responsible for monitoring the pregnant Congious, they did not respond to her banging. As a result, Congious gave birth to her baby girl alone in the cell. At some point after the birth, one of the correctional officers entered the cell. Upon seeing the blood from the delivery, the correctional officer called the paramedics. Tragically, the baby girl was not breathing by that point and had only a faint heartbeat due to the umbilical cord wrapped around her tiny neck. Doctors at Cook Children's Hospital attempted to administer life-saving aid to the comatose baby over the course of ten days, but she had no brain activity due to oxygen deprivation for an unknown period of time. Congious was also in a worrisome state due experiencing a sizable loss of blood and a grade-3 perineal tear. Since the mother and daughter were taken to different hospitals, Congious never saw her baby daughter again because, on May 27, 2022, doctors removed her baby's life support.

The same day as her daughter's death, Congious was put on suicide watch due to her worsening mental health symptoms. Despite her grief, Congious was denied compassionate release to attend her daughter's funeral. Yet six days later, the charges against Plaintiff were dropped. Shockingly, at no point during her five months of incarceration did Congious receive a legal hearing. Following her release from Tarrant County Jail, Congious was transferred to JPS Hospital

where she underwent months of intensive inpatient care. Congious was eventually released into the care of her mother. Still unable to fully comprehend these traumatic events, Congious continues to ask when her deceased daughter will come back.

### B. Procedural Background

On March 31, 2023, the Court issued its Memorandum Opinion and Order on five motions to dismiss, leaving Tarrant County as the sole remaining defendant.[2] One of the motions to dismiss was filed by Dr. Shaw.[3] At the time, the Court based its decision on the lack of plausible facts that Dr. Shaw knew Congious was in pain the morning she gave birth and, notwithstanding that knowledge, refused her medical care.[4] As a result, the Court found Dr. Shaw was entitled to qualified immunity[5] and entered its Final Judgment as to the dismissed Defendants, including Dr. Shaw, on April 3, 2023.[6]

Approximately one year later, on April 2, 2024, Plaintiff moved the Court for relief from the Final Judgment.[7] According to Plaintiff, newly discovered evidence warrants reconsideration of the Final Judgment as to Dr. Shaw.[8] The new evidence is an email produced in December 2023 towards the end of discovery.[9] The email contained a daily report of inmates in the Female Infirmary sent to Dr. Shaw and other recipients.[10] With respect to Congious, the daily report included the entry that she "took PM ENSRE but Refused Breakfast C/O ABD CRAMPS."[11] Plaintiff's retained expert, Dr. David A. Gutman, opined that Congious's abdominal cramps on

---

[2] Mar. 31, 2023 Mem. Op. & Order 33, ECF No. 61.
[3] *Id.*
[4] *Id.* at 22.
[5] *Id.* at 33.
[6] Apr. 3, 2023 Final J., ECF No. 62.
[7] Pl.'s Br. in Support of Mot. for Relief from J. 6, ECF No. 93.
[8] *Id.* at 2–3.
[9] *Id.* at 3.
[10] *Id.*
[11] *Id.*

4

the morning she gave birth were uterine contractions from labor.[12] Plaintiff argues that this new evidence reveals Dr. Shaw knew prior to Congious giving birth that she was experiencing labor pains.[13]

## II.     LEGAL STANDARD

Rule 60 authorizes a court to provide relief "from a final judgment, order, or proceeding" under limited circumstances. FED. R. CIV. P. 60(b)(1)–(6); *see SEC v. Novinger*, 40 F.4th 297, 302 (5th Cir. 2022) (discussing the "limited set of circumstances" for reopening a case under Rule 60(b)). One of those circumstances is when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2). To prevail on a Rule 60(b)(2) motion, "a movant must demonstrate: (1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Doe v. Keller Independent School District*, No. 4:21-cv-01094-O, 2023 WL 2711629, *4 (N.D. Tex. Mar. 30, 2023) (cleaned up). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Because of the extraordinary nature of this remedy, Rule 60 requires that any such requests "must be made within a reasonable time." FED. R. CIV. P. 60(c)(1). And if Rule 60(b)(2) is the asserted reason for reconsideration, the request must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." *Id.*

---

[12] Pl.'s App. in Support of Mot. for Relief from J. 12, ECF No. 94.
[13] Pl.'s Reply Br. in Support of Mot. for Relief from J. 1, ECF No. 98.

### III. ANALYSIS

Plaintiff seeks reconsideration of the Court's April 3, 2023 Final Judgment (ECF No. 62) based on newly discovered evidence.[14] In the Final Judgment, the Court dismissed with prejudice all of Plaintiff's claims against Defendant.[15] Defendant opposes reconsideration, arguing that Plaintiff's motion is untimely and, even if timely, Plaintiff fails to carry her burden under Rule 60(b)(2).[16] Having considered the parties' arguments and reviewed the applicable law, the Court finds that Plaintiff's reconsideration request is timely made and satisfies Rule 60(b)(2)'s requirements.

#### A. Timeliness of the Rule 60 Motion

The Court first considers whether Plaintiff's Rule 60(b)(2) reconsideration request is timely. Defendant argues that Plaintiff's motion is untimely in two ways: (1) Plaintiff filed her motion more than one year after the Court's March 31, 2023 Memorandum Opinion and Order and (2) Plaintiff did not seek reconsideration within a reasonable time of discovering the new email.[17] Plaintiff rejects both untimeliness characterizations.[18] The Court agrees with Plaintiff.

##### 1. One-Year Limit

Based on the text of Rule 60, the Court finds that Plaintiff's motion is timely because it was filed within one year after entry of the Final Judgment. The Supreme Court instructs lower courts to "give the Federal Rules of Civil Procedure their plain meaning." *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123 (1989) (citation omitted). Complying with that instruction, the text of Rule 60 is straightforward: reconsideration based on the first three grounds is

---

[14] Pl.'s Br. in Support of Mot. for Relief from J. 1–2, ECF No. 93.
[15] Apr. 3, 2023 Final Judgment, ECF No. 62.
[16] Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 1–2, ECF No. 97.
[17] *Id.* at 9–10.
[18] Pl.'s Reply Br. in Support of Mot. for Relief from J. 6–10, ECF No. 98.

6

permissible "no more than a year after the entry of the judgment *or* order *or* the date of the proceeding." FED. R. CIV. P. 60(c)(1) (emphases added). The use of the connector "or" is instructive here.

As the Supreme Court has explained, "or" is "'almost always disjunctive.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (Thomas, J.) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013) (Scalia, J.)). Applying this disjunctive understanding here implies that "judgment," "order," and "proceeding" connote different events with independent significance. As a result, it is possible for there to be multiple triggering events that start the one-year clock. This is the only construction that avoids rendering any words superfluous. *Corley v. United States*, 556 U.S. 303, 314 (2009). In contrast, to accept Defendant's interpretation of Rule 60 would be to give meaning only to one of the three conditions, "order," while rendering the remaining two conditions, "judgment" and "proceeding," obsolete. The only way to give effect to all words is to construe the disjunctive "or" as creating three mutually exclusive conditions. In other words, the party seeking reconsideration has a choice depending on if there are multiple qualifying events—an order, judgment, or proceeding—that occurred on different dates.

There are two qualifying events here: the underlying March 31, 2023 Memorandum Opinion and Order and the April 2, 2023 Final Judgment. As such, Plaintiff could seek reconsideration based on either event provided she did so within one year and provide that nothing else blocked reconsideration of one of those final events. Plaintiff chose to seek reconsideration based on the later event, the Final Judgment, even though it rests on the reasoning outlined in the underlying Memorandum Opinion and Order. Because the Final Judgment qualifies as an independent event under Rule 60 and Plaintiff sought reconsideration within one year, the Court finds that Plaintiff's motion is timely barring any other obstacles.

Additional obstacles may come in the form of a conflict with another rule. When this occurs, the Court must endeavor to interpret the applicable rule in harmony with the other rules. *Cf. Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896, 899 (E.D. Tex. 2006) (explaining that "[i]nterpretation and enforcement of . . . the Local Patent Rules . . . should not conflict with, and should harmonize with . . . the Federal Rules of Civil Procedure"). Doing so here, the only application of Rule 60 in this case that prevents a conflict with another rule—Rule 54—is to conclude that reconsideration is appropriate based only on the Final Judgment. Pursuant to Rule 54,

> [w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b). The Court's March 31, 2023 Memorandum Opinion and Order adjudicated less than all of the claims for fewer than all parties to the lawsuit because claims against Defendant Tarrant County survived dismissal.[19] The Court subsequently determined there was no just reason to delay final judgment as to those parties dismissed from the lawsuit.[20] By entering the Final Judgment as to Defendant, Plaintiff could no longer seek revision of the Court's March 31, 2023 Memorandum Opinion and Order under Rule 54(b) "at any time before the entry of a judgment." *Id.* As a result, Plaintiff's only option for reconsideration was within one year of the Final Judgment. Therefore, this reason likewise supports a finding that Plaintiff's motion is timely.

---

[19] Mar. 31, 2023 Mem. Op. & Order 33, ECF No. 61.
[20] Apr. 3, 2023 Final Judgment, ECF No. 62.

### 2. Reasonable Time

In addition to the one-year outer limit for seeking reconsideration based on the first three grounds, Rule 60 also requires the movant to file the motion "within a reasonable time." FED. R. CIV. P. 60(c)(1). "What constitutes reasonable time necessarily depends on the facts in each individual case." 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2866 (3d ed. 2024). The facts to consider are the reasons for any delay seeking relief and any prejudice to the non-moving party due to the delay. *Id.* Considering those facts here, the Court concludes that Plaintiff moving for reconsideration four months after discovering the new evidence is not an unreasonable time under the circumstances.

Courts in the Fifth Circuit routinely find the filing of a motion to reconsider timely when filed four months after discovering the ground upon which reconsideration is based. *See e.g.*, *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992) (citing with approval the Second Circuit finding that a Rule 60(b) motion was brought within a reasonable time when it was filed four months after the grounds for the motion were discovered); *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 929 (5th Cir. 1976) (determining that a Rule 60(b) motion was filed within a reasonable time when it was filed four months after the filing of a notice of appeal); *Curley v. JP Morgan Chase Bank NA*, No. 14-2633, 2015 WL 3863499, *1–*2, W.D. La. June 22, 2015) (addressing the merits a Rule 60(b) motion filed within four months); *Coleman v. Cain*, No. 05-799, 2009 WL 3400462, *4 (E.D. La. Oct. 14, 2009) (assuming without deciding that a Rule 60(b) motion brought within about four months was a reasonable time). Other courts have even found reconsideration requests timely after lengthier periods of time. *See, e.g.*, 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2866 (3d ed. 2024) (collecting cases).

Even if the Court determined that this four-month period constituted undue delay, consideration of what occurred during this time persuades the Court that Plaintiff's motion was still made within a reasonable time. To begin, Plaintiff's counsel necessarily needed to evaluate the importance of the new email, submit it for analysis by Dr. Gutman, perform legal research and analysis, and then prepare the Rule 60(b) motion with supporting materials.[21] Plaintiff's counsel also apprises the Court of various intervening events beyond just the holiday season, including a leave of absence for the birth of Plaintiff's counsel's baby.[22] Given these circumstances, the Court finds that four months is a reasonable length of time to seek reconsideration and does not indicate an undue delay.

Regarding the final consideration, the Court finds no prejudice to Defendant. At the outset, Defendant did not claim any prejudice in his response brief.[23] Nor did Defendant dispute that he knew or should have known of the new email because he was the recipient.[24] The Court finds that Defendant cannot be unfairly prejudiced based upon the very facts of which he was already aware. Combined with the finding that Plaintiff reasonably sought reconsideration within four months of discovering the new evidence, there is no timeliness bar to Plaintiff's motion.

### B. Newly Discovered Evidence

Having determined that the reconsideration request is timely, the Court next evaluates Plaintiff's specific reason for reconsideration: newly discovered evidence. Rule 60(b)(2) deals with situations in which newly discovered evidence calls into question the validity of a judgment by directly refuting the underpinnings of the theory which prevailed. *Stilwell v. Travelers Ins. Co.*, 327 F.2d 931 (5th Cir. 1964); *Serio v. Badger Mut. Ins. Co.*, 266 F.2d 418 (5th Cir. 1959). For new

---

[21] Pl.'s Reply Br. in Support of Mot. for Relief from J. 9–10, ECF No. 98.
[22] *Id.*
[23] *See generally* Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 1–11, ECF No. 97.
[24] *See generally id.*

evidence to justify reopening the case under Rule 60(b)(2), the moving party must satisfy two requirements. First, the movant must demonstrate that the new evidence "could not have been discovered with reasonable diligence in time for a Rule 59(b) motion." *Jenkins v. Tarrant Cnty. Sheriff's Off.*, No. 22-10244, 2023 WL 5665774, at *2 (5th Cir. Sept. 1, 2023) (per curiam) (citation and internal quotation marks omitted). Second, the new evidence must be "material, controlling, or would have produced a different result." *Id.* Plaintiff meets both requirements.

   1. **Reasonable Diligence**

Plaintiff argues that she acted with reasonable diligence to uncover the new evidence.[25] In response, Defendant suggests that Plaintiff failed to exercise reasonable diligence at two different stages of this lawsuit: (1) prior to filing and (2) prior to dismissal.[26] Neither argument shows a lack of reasonable diligence. Instead, the Court finds that the new evidence was unavailable to Plaintiff when the Court dismissed claims against Defendant. And there is no reason to believe that this evidence should have been available to Plaintiff at these early stages of the dispute.

Start with the question of whether Plaintiff deployed diligent efforts to obtain relevant medical records—or other records that might have included the new email on which her reconsideration request is based—prior to filing suit. Plaintiff represents that she attempted to gain access to these records but explains that the new email was not included in the produced information.[27] But even if Plaintiff had not requested her records prior to filing this lawsuit, Defendant's argument still falls flat by presupposing that Plaintiff was aware such an email existed in the first place. Contrast this situation with the case cited by Defendant. In *Johnson-Williams v. CitiMortgage, Inc.*, the plaintiff was already aware that a particular document existed and sought

---

[25] Pl.'s Br. in Support of Mot. for Relief from J. 4, ECF No. 93; Pl.'s Reply Br. in Support of Mot. for Relief from J. 2–4, ECF No. 98.
[26] Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 5–6, ECF No. 97.
[27] Pl.'s Reply Br. in Support of Mot. for Relief from J. 2–3, ECF No. 98.

11

reconsideration based on the fact that a hard copy was not previously made available. 3:14-cv-03927-M (BH), 2016 WL 853079, at *2 (N.D. Tex. Feb. 11, 2016) (Ramirez, M.J.). As a result, there was "simply no indication that the [document] was not previously available to [the plaintiff]." *Id.* This opposite is true here. There is no reason to believe that Plaintiff would have known, prior to discovery, of this particular internal communication. Therefore, this first argument fails to overcome Plaintiff's showing of reasonable diligence.

Next consider the question of whether Plaintiff undertook sufficiently diligent efforts to obtain her medical records—or other records that might have included the new email on which her reconsideration request is based—after filing the lawsuit but prior to the motion-to-dismiss stage. According to Defendant, Plaintiff should have exercised additional diligence prior to dismissal to ensure that discovery proceeded.[28] To be sure, Plaintiff "failed to timely respond to the motion" to stay discovery despite opposing the motion.[29] But a response would not have produced a different outcome. As the Fifth Circuit made clear, an assertion of qualified immunity in a motion to dismiss requires the district court to stay all discovery until after resolution of the qualified immunity question. *See Carswell v. Camp*, 54 F.4th 307, 312–13 (5th Cir. 2022) (explaining that "'the driving force' behind qualified immunity is 'a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery'" and stressing "'the importance of resolving immunity questions at the *earliest possible stage* in litigation'" (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)). That is because the qualified immunity defense exists to prevent "the burdens litigation imposes on public officials."[30] *Id.* at 313. Given that various individual Defendants, including Dr. Shaw, asserted the defense of qualified immunity, the Court

---

[28] Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 5, ECF No. 97.
[29] Apr. 4, 2022 Order, ECF No. 25.
[30] Pl.'s Reply Br. in Support of Mot. for Relief from J. 2, ECF No. 98.

was obligated to stay discovery with or without a response from Plaintiff. As a result, Plaintiff did not have the new email prior to dismissal because discovery could not yet begin. Defendant does not contest that Plaintiff was neither in possession nor aware of the new evidence until long after dismissal.[31]

Finding Defendant's arguments unavailing, the Court then considers Plaintiff's own explanation for obtaining the newly discovered evidence to determine whether she acted with reasonable diligence. The Court concludes that she does. Plaintiff represents that she received the new email in December 2023 through the course of discovery.[32] This occurred between eight and nine months after the Court's dismissal of Defendant. Even after receiving the discovery production containing the new email, Plaintiff then sought the opinion of her expert.[33] Dr. Gutman reviewed the new email and opined in his expert report that Congious experienced abdominal pain the morning she gave birth, revealing that she was, in fact, in labor.[34] Plaintiff's expert report was timely submitted on December 12, 2023.[35] And because Plaintiff's request for reconsideration is based not just on the existence of the new email, but also the expert opinion discussing it, the Court must assess whether the approximately four-month period between receiving the email and seeking reconsideration shows a lack of reasonable diligence. It does not.

As explained above, a four-month delay is not an unreasonable length of time to digest the new evidence—the unearthed email and the expert report analyzing its significance—and then prepare and file a motion for reconsideration. Similarly, Defendants do not suggest that Plaintiff

---

[31] *See generally* Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 5–6, ECF No. 97.
[32] Pl.'s Br. in Support of Mot. for Relief from J. 3, 4, ECF No. 93.
[33] *Id.* at 3; Pl.'s Reply Br. in Support of Mot. for Relief from J. 3, ECF No. 98.
[34] Pl.'s App. in Support of Mot. for Relief from J. 12, ECF No. 94.
[35] Apr. 6, 2023 Am. Scheduling Order 1, ECF No. 65; *see also* Pl.'s Reply Br. in Support of Mot. for Relief from J. 3–4, ECF No. 98 (noting that the remaining Defendant, Tarrant County, disclosed its responsive expert designation on November 13, 2023, which made Plaintiff's rebuttal expert report due on December 12, 2023).

failed to comply with any discovery deadlines or otherwise generated delays in the discovery process that caused her to receive the new evidence at a much later date.[36] Therefore, the Court finds that Plaintiff exercised reasonable diligence and concludes that Plaintiff satisfies the first Rule 60(b)(2) requirement.

### 2. Material, Controlling, or Would Have Produced a Different Result

Plaintiff argues that the new email is material, controlling, and would have produced a different result at the motion-to-dismiss stage as to Defendant.[37] In response, Defendant contends that the new email is neither material nor controlling, and would not have altered the Court's decision to dismiss claims against Defendant.[38] The Court agrees with Plaintiff. If Plaintiff had the new email and accompanying expert opinion discussing it, she would have alleged those facts to show that Dr. Shaw took no action in response to learning about her abdominal pain.[39] These are material facts that, taken as true, would have changed the outcome of the Court's decision. *Cf. Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (recognizing that courts must take all well-pleaded facts as true).

Defendant maintains that the new email "is not the type of evidence that supports relief under Rule 60(b)(2) because it 'simply adds more information and detail to facts the Court previously considered.'"[40] Despite correctly reciting the law, Defendant's errs in the application. The new email is not "merely cumulative or impeaching." *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009). To the contrary, it provides new facts that materially alter the Court's prior analysis.

---

[36] *See generally* Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 5–6, ECF No. 97.
[37] Pl.'s Br. in Support of Mot. for Relief from J. 4–5, ECF No. 93.
[38] Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 6–9, ECF No. 97.
[39] Pl.'s Br. in Support of Mot. for Relief from J. 5, ECF No. 93.
[40] Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 1, ECF No. 97 (quoting *Doe*, 2023 WL 2711629, at *4).

As the Court explained at the motion-to-dismiss stage, "'[d]eliberate indifference is an extremely high standard to meet.'"[41] That is why "an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, a plaintiff "must show that the officials refused to treat h[er], ignored h[er] complaints, intentionally treated h[er] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* There mere "failure to alleviate a significant risk that the official should have perceived, but did not[,] is insufficient to show deliberate indifference." *Id.*

The newly discovered evidence demands a different application of this law. Previously, the Court determined that Dr. Shaw's "calculated decision to categorically deny [Congious] medical treatment" was "a matter for medical judgment."[42] Based on the available facts, the Court determined that Dr. Shaw was entitled to qualified immunity because the denial of care was simply the determination that "maintain[ing] her standard baseline of care" was appropriate under the circumstances despite the ever-present psychological risks that complicated Congious's situation.[43] But the Court also relied on the absence of "evidence that Dr. Shaw ever knew Plaintiff was experiencing untreated pain."[44] The new evidence fills in that gap.

Now that evidence regarding Congious's pain has come to light, it materially affects the Court's prior analysis. Taking the new evidence as true, as the Court would do at the motion-to-dismiss stage, the reasonable inference to draw is that Dr. Shaw ignored Congious's complaint of abdominal pain. Given that Dr. Shaw also knew Congious was largely nonverbal, cognitively delayed, and psychologically fragile such that she may not recognize what a contraction is or when

---

[41] Mar. 31, 2023 Mem. Op. & Order 21, ECF No. 61 (quoting *Domino*, 239 F.3d at 756) (cleaned up).
[42] *Id.* at 20–21.
[43] *Id.* at 21.
[44] *Id.* at 22.

labor starts, this new evidence, taken as true, reveals that Dr. Shaw either "refused to treat" Congious, "intentionally treated h[er] incorrectly," or engaged in a manner tantamount to a "wanton disregard for [her] serious medical needs." *Id.* This goes beyond Dr. Shaw delaying the transfer of Chastity to a medical facility or not otherwise providing around-the-clock monitoring.[45] Those actions, as the Court previously explained, can be reconciled as continuing the baseline care due to the absence of a change to the medical status quo.[46] The new evidence reveals conduct of a far more wanton nature.

This is not the only material change to the Court's analysis. Similarly, the Court's assessment that "Plaintiff failed to carry [her] burden of proving Dr. Shaw's deliberate indifference was clearly established" no longer stands.[47] That is because the new evidence presents substantially similar circumstances to those in *Easter v. Powell*, which clearly established that a violation of a prison inmate's right to medical care. 467 F.3d 459, 461 (5th Cir. 2006). As *Easter* explained, it is appropriate to infer subjective awareness if a substantial risk of harm when the medical professional knew (1) the underlying medical risks or condition facing the patient, (2) the patient was experiencing severe pain, and (3) the patient did not have the required treatment in light of those combined circumstances. *Id.* at 463. In such a situation, "turn[ing] a deaf ear" without adjusting the baseline of care to account for the change in the medical circumstances showed deliberate indifference where a nurse ignored the inmate's complaints of chest pains even though he suffered from a heart condition and lacked the necessary medication to treat the pain. *Id.* at 463–64. Like *Easter*, Dr. Shaw offered Congious no new treatment options when presented with information about her abdominal pain indicating labor. Instead, Dr. Shaw "turned a deaf ear" by

---

[45] *Id* at 5.
[46] *See id.* at 21 (considering the "facts at hand" to determine that "maintain[ing] her standard baseline of care" was not an unreasonable response to the risks even though harm resulted).
[47] *Id.* at 22.

electing to do nothing and instead keeping Congious confined to her cell without any monitoring or addressing the pain.

Defendant attempts to distinguish *Easter* by arguing that the inmate directly communicated his concerns to the nurse, whereas Congious did not directly communicate anything to Dr. Shaw.[48] But *Easter* does not even suggest that the means of conveying the complaint is important to the analysis. What matters is how the facts reveal a subjective awareness of the serious medical risk—not the manner in which the subjective awareness materializes. *Id.* at 464. Therefore, that Congious did not verbally communicate her complaints to Dr. Shaw in person is irrelevant in light of the email report directly conveying these complaints on her behalf.

Defendant also attempts to downplay the email as not adding any meaningful facts since the Court already accepted that Dr. Shaw subjectively knew Chastity was at risk and made a decision to deny her medical care.[49] But as explained above, the new facts do more than corroborate Plaintiff's allegations about Congious's medical risks and Dr. Shaw maintaining the baseline level of care. Instead, the new facts depict a situation in which Dr. Shaw "refused to treat" Congious, "intentionally treated h[er] incorrectly," or engaged in a manner tantamount to a "wanton disregard for [her] serious medical needs" after learning of a change in her medical situation indicating labor. *Domino*, 239 F.3d at 756. This inference is based entirely on the newly discovered evidence—the email and expert report—that, when taken as true, reveal Dr. Shaw subjectively knew Congious was experiencing labor pains. Based on these new facts, Dr. Shaw's failure to take any action to treat Congious provides material information not previously known to the Court that would have changed the result at the motion-to-dismiss stage. Indeed, these are not merely cumulative of those facts already before the Court.

---

[48] Def.'s Resp. to Pl.'s Mot. for Relief from J. & Br. in Support 7–8, ECF No. 97.
[49] *Id.* at 6–7.

Finally, Defendant's evidentiary arguments about the admissibility and substance of the new evidence are unavailing. At the motion-to-dismiss stage, the Court must accept all well-pleaded facts as true. *Sonnier*, 509 F.3d at 675. If Plaintiff had the new email and Dr. Gutman's expert report when pleading facts, she explains that she "would have alleged that Dr. Shaw knew on the morning that [Congious] gave birth that she was complaining of stomach pain and in labor but did nothing in response."[50] The Court would have been required to accept these facts as true at that stage. Challenges to the evidentiary underpinnings of these facts are properly asserted during the merits stages—summary judgment or trial.

### C. Terms for Reopening

Having concluded that reconsideration is warranted, the Court must consider the terms of reopening the case. Rule 60 emphasizes that relief from a final judgment must be on "just terms." FED. R. CIV. P. 60(b). This means that the Court must apply any conditions it deems appropriate when reopening a case. Doing so here, the Court finds it appropriate to reopen this case only on a limited basis. The new evidence warrants reopening this case as to the denial-of-medical-care-claim brought against Dr. Shaw under 42 U.S.C. § 1983. Crucially, this case is *not* reopened as to the wrongful-death claim and survival action for the reasons already discussed in the Court's March 31, 2023 Memorandum Opinion & Order.[51] Plaintiff's newly discovered evidence in no way alters the Court's prior determination as to those claims.

In addition to limiting the scope of reopening the case, the Court also finds it appropriate for this case to proceed in an expedited manner given that this case was filed more than two-and-a-half years ago.[52] At this point, the issues are well-known to both parties and were previously

---

[50] Pl.'s Reply Br. in Support of Mot. for Relief from J. 5, ECF No. 98.
[51] Mar. 31, 2023 Mem. Op. & Order 19, ECF No. 61.
[52] Pl.'s Compl., ECF No. 1 (filed on February 3, 2022).

subject to full briefing at the motion to dismiss stage. Therefore, Plaintiff **SHALL** file her Second Amended Complaint against Defendant by no later than **July 29, 2024**. Upon the filing of the amended complaint, Defendant **SHALL** submit his answer or other responsive pleading by no later than **August 12, 2024**. Should Defendant elect to file a renewed motion to dismiss, Plaintiff's response **SHALL** be due by **August 23, 2024** and Defendant's reply **SHALL** be due by **August 30, 2024**.

IV.   **CONCLUSION**

Although an extraordinary remedy, the Fifth Circuit has made clear that Rule 60(b) "should be liberally construed in order to achieve substantial justice." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 305 (5th Cir. 2007). Here, Congious's claim is that Dr. Shaw deliberately denied her medical care which resulted in the tragic and preventable death of her innocent baby. When the Court entered its Final Judgment as to Defendant, Congious did not have the new email showing that Dr. Shaw took no action on the day Congious gave birth despite knowing that she was in pain and in labor. Congious also did not have the expert report discussing this new email. Therefore, having determined that Plaintiff timely sought reconsideration and, in doing so, pointed to newly discovered evidence justifying such relief, the Court finds that Congious's case must proceed in light of the newly discovered evidence so that justice may be achieved. Therefore, the Court **GRANTS** Plaintiff's motion for reconsideration, subject to the limitation discussed above, and **SETS** this case on the expedited track. The Clerk of Court is **DIRECTED** to **REOPEN** this matter upon the filing of Plaintiff's Second Amended Complaint.

   **SO ORDERED** on this **16th day** of **July, 2024**.

                                                                 _____
                                                                 Reed O'Connor
                                                                 **UNITED STATES DISTRICT JUDGE**

19