UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CHASITY CONGIOUS, § <br> by and through her Guardian, Kimberly § <br> Hammond, on behalf of Herself and as § <br> Mother and Next Friend of Z.C.H., § <br> Deceased, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> AARON IVY SHAW, § <br> § <br> Defendant. § | Civil Action No. 4:22-cv-00092-O |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment and Brief in Support (ECF Nos. 119–120); Defendant's Response and Brief in Support (ECF Nos. 133–134); and Plaintiff's Reply (ECF No. 136). Additionally, before the Court are Defendant's Motion for Summary Judgment and Brief in Support (ECF Nos. 124–125); Plaintiff's Response and Brief in Support (ECF No. 127–128); and Defendant's Reply (ECF No. 139). Having reviewed the briefing, the Court determines that Defendant's Motion for Summary Judgment should be **GRANTED**.

**I.  BACKGROUND**[1]

    **A.  Facts**

This case arises from the arrest and incarceration of a mentally ill pregnant woman, which

---

[1] Both parties argue that there are no material facts in dispute. Thus, the facts of this case are taken from the parties' summary judgment briefing and the Court's previous Orders. *See* Pl.'s Br. Supp. Mot. Summ. J., ECF No. 120; Def.'s Br. Supp. Mot. Summ. J., ECF No. 125; Mem. Op. & Order, Mar. 31, 2023, ECF No. 61; Mem. Op. & Order, July 16, 2024, ECF No. 101.

culminated in the tragic death of her baby daughter, who was born in her mother's prison cell. Plaintiff Chastity Congious is a woman with a history and diagnoses of schizoaffective disorder, bipolar type, psychosis, schizophrenia, mood disorder, hallucinations, delusions, suicidal ideations, prior suicide attempts and self-harm, anxiety disorder, adjustment disorder, intellectual disability, and a family history of mental health and behavioral disorders. She was twenty-one years old during all the events at issue in this case.

On January 15, 2020, Plaintiff experienced a mental health crisis involving behaviors likely to lead to self-harm. Her family called the Fort Worth Police Department in order to have Plaintiff involuntarily committed at JPS Hospital. Instead, when the police arrived on scene, they placed Plaintiff under arrest for simple assault and took her into custody.

During her time in jail, she was detained in solitary confinement and segregated from staff and other inmates. As a result, Plaintiff's condition deteriorated. Plaintiff received treatment from multiple health professionals who reported that she was suicidal and often unable to understand that she was pregnant. By mid-May, Plaintiff was nonverbal, incommunicative, and had not made a sound in weeks. Despite Plaintiff's worsening condition, routine prenatal checkups consistently revealed that her baby was in good health.

As the end of Plaintiff's pregnancy approached, a nurse reported that Plaintiff may not understand what a contraction was. Shortly afterwards, when Plaintiff was 37-weeks pregnant, Dr. Melanie Carter conducted a routine obstetrics exam of Plaintiff and her baby. Dr. Carter reported that Plaintiff did not respond to questions, would not be able to express her symptoms, and may not recognize when she went into labor. Because of these conditions, Dr. Carter recommended that Plaintiff should have an induced labor. Dr. Aaron Shaw ("Defendant"), then-medical director of Tarrant County Jail, did not immediately act on Dr. Carter's recommendation to induce labor. Dr.

Shaw also oversaw all of Plaintiff's care, and he was responsible for deciding to keep Plaintiff in her solitary cell under standard conditions rather than transfer her to a medical facility or afford her constant around-the-clock care, monitoring, and supervision.

Four days after her last check-up with Dr. Carter, Plaintiff went into labor on the morning of May 17, 2020. A short time after eating breakfast, Plaintiff's stomach began to bother her and she thought that she needed to use the bathroom. When using the bathroom did not relieve her abdominal pain, Plaintiff banged on the window of her cell to try to get help. At that time, blood from Plaintiff's labor was visible on the toilet seat. Correctional Officers responsible for monitoring Plaintiff that day did not respond to Plaintiff's banging. Because she received no assistance, Plaintiff returned to her bed and gave birth to her baby girl Z.C.H. by herself.

Later, at or around 9:07 a.m., a correctional officer entered Plaintiff's cell and noticed the blood on her bedding from the delivery. Paramedics rushed to the scene. At that point, Plaintiff had lost excessive amounts of blood, and the umbilical cord was wrapped around Z.C.H.'s neck. Z.C.H. was not breathing and had a faint heartbeat. Medical personnel separated the mother and her new daughter, taking them to different hospitals. Plaintiff never saw her daughter again.

At JPS Hospital, Plaintiff received treatment for her blood loss and for a grade 3 perineal tear. Meanwhile, at Cook Children's Hospital, doctors attempted to administer life-saving aid to the newborn Z.C.H. However, Z.C.H.'s brain had been severely damaged due to a lack of oxygen after being strangled by the umbilical cord for an unknown length of time. Although alive, Z.C.H. could not breath on her own, remained comatose, and had no brain activity.

Over the next ten days, doctors kept Z.C.H. alive with intensive support. Z.C.H. was baptized, and her doctors requested an opportunity for Plaintiff to see her ailing daughter. That request was denied. One day later, on May 27, 2022, doctors removed life support and Z.C.H. died.

The same day as her daughter's death, Plaintiff was put on suicide watch. Plaintiff's mental health symptoms worsened, and she stopped eating. Plaintiff's family requested compassionate release so that Plaintiff could attend her daughter's funeral. Like the previous request for Plaintiff to see her daughter, this request was also denied. Notwithstanding the fact that Plaintiff was not allowed to attend her daughter's funeral, the state dropped the charges against Plaintiff six days after that funeral. Plaintiff never had a legal hearing during her five-month period of incarceration.

Plaintiff was then transferred to JPS Hospital where she received months of intensive, inpatient care. Following her treatment, Plaintiff was released into the care of her mother. Unable to fully appreciate all these events, Plaintiff still asks about her daughter Z.C.H. and when she will come back.

### B. Procedural History

This action has a long procedural history; thus, the Court only repeats the history as it specifically relates to Defendant. On March 31, 2023, the Court issued its Memorandum Opinion and Order on five motions to dismiss, leaving Tarrant County as the sole remaining defendant.[2] One of the motions to dismiss was filed by Defendant, Dr. Shaw.[3] At the time, the Court based its decision on the lack of plausible facts that Defendant knew Plaintiff was in pain the morning she gave birth and, notwithstanding that knowledge, refused her medical care.[4] As a result, the Court found Defendant was entitled to qualified immunity[5] and entered its Final Judgment as Defendant, on April 3, 2023.[6]

---

[2] Mem. Op. & Order 33, Mar. 31, 2023, ECF No. 61.
[3] *Id.*
[4] *Id.* at 22.
[5] *Id.* at 33.
[6] Apr. 3, 2023 Final J., ECF No. 62.

4

Approximately one year later, on April 2, 2024, Plaintiff moved the Court for relief from the Final Judgment.[7] According to Plaintiff, newly discovered evidence warrants reconsideration of the Final Judgment as to Defendant.[8] The new evidence is an email produced in December 2023 toward the end of discovery.[9] The email contained a daily report of inmates in the Female Infirmary sent to Defendant and other recipients.[10] With respect to Plaintiff, the daily report included the entry that she "took PM ENSRE but Refused Breakfast C/O ABD CRAMPS."[11] Plaintiff's retained expert, Dr. David A. Gutman, opined that Plaintiff's abdominal cramps on the morning she gave birth were uterine contractions from labor.[12] Plaintiff argued that this new evidence revealed Defendant knew prior to Plaintiff giving birth that she was experiencing labor pains.[13] The Court granted Plaintiff's Motion and reopened this action because the facts, taken as true at the motion to dismiss stage, constituted deliberate indifference and overcame Defendant's qualified immunity.[14] The parties conducted discovery and moved for summary judgment.[15] Both parties argue that there are no material facts in dispute.[16] The Motions are ripe for the Court's review.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Summary judgment is not "a disfavored procedural shortcut, but

---

[7] Pl.'s Br. Supp. Mot. Relief J. 6, ECF No. 93.
[8] *Id.* at 2–3.
[9] *Id.* at 3.
[10] *Id.*
[11] *Id.*
[12] Pl.'s App. Supp. Mot. Relief J. 12, ECF No. 94.
[13] Pl.'s Reply Br. Supp. Mot. Relief J. 1, ECF No. 98.
[14] Mem. Op. & Order 19, July 16, 2024, ECF No. 101.
[15] Pl.'s Mot. Summ. J., ECF No. 119; Def.'s Mot. Summ. J., ECF No. 124.
[16] *See* Pl.'s Br. Supp. Mot. Summ. J. 3, ECF No. 120; Def.'s Br. Supp. Mot. Summ. J. 1, ECF No. 125.

rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis for its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### B.  Qualified Immunity

The doctrine of qualified immunity protects government officials sued under 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Deciding whether an official is entitled to qualified immunity requires a court to apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first prong of

the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Id.* The second prong asks whether that right was clearly established at the time of the government official's alleged misconduct. *Id.* "The *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

When a party asserts qualified immunity at the summary-judgment stage, the defense "changes the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden." *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to show a constitutional right was violated. *Id.* A plaintiff must also show that the violated right was "clearly established" at the time of the alleged violation. *See Morgan*, 659 F.3d at 371. At the pleading stage, the plaintiff must allege facts that demonstrate unlawful conduct; at the summary-judgment stage, the plaintiff must show proof of such facts. *Pearson*, 555 U.S. at 232.

In addition to the added substantive burden put on the nonmovant, the nonmovant also carries the initial burden of proof. Under ordinary summary-judgment principles, the movant has the initial burden of proving that no genuine dispute exists and that no reasonable jury could find for the nonmovant. *Anderson*, 477 U.S. at 252. However, with qualified immunity, when a defendant makes a good faith assertion of qualified immunity, the burden of proof shifts to the plaintiff "to show that the defense is not available." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). To satisfy this burden of proof, a plaintiff must show that: (1) there is a genuine dispute of material fact, (2) that a jury could return a verdict for the plaintiff entitling him to relief for a constitutional injury, and (3) plaintiff's version of the facts constitutes a violation of clearly established law. *Joseph*, 981 F.3d at 330. When both sides offer competing versions of events, the

Court must accept "the plaintiff's version of the facts," unless that version "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007).

### C. Deliberate Indifference to Serious Medical Needs

The Fourteenth Amendment vests pretrial detainees with the constitutional right to have the essentials of their well-being tended to while in state custody, including their basic rights to be provided medical care and protection. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Detainees often seek vindication of these rights through claims of deliberate indifference. However these claims are framed, i.e., as a claim for medical care or for protection, "both medical care and failure-to-protect cases [are] treated the same for purposes of measuring constitutional liability." *Id.* at 643. A defendant acts with "deliberate indifference" when he "knows of and disregards an excessive risk to inmate health or safety; [meaning] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is an extremely high standard to meet." *Dyer v. Hous.*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). This requires the defendant's subjective knowledge of the facts giving rise to a serious risk of harm to the detainee. "[A]n official's failure to alleviate a significant risk that he *should have perceived* but did not, while no cause for commendation," does not meet the standard for deliberate indifference. *See Farmer*, 511 U.S. at 838 (emphasis added) (discussing the standard for deliberate indifference in the Eighth Amendment context); *see also Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999) ("Subjective deliberate indifference means 'the official had subjective knowledge of a substantial risk of serious harm to

8

a pretrial detainee but responded with deliberate indifference to that risk.'") (quoting *Hare*, 74 F.3d at 650)).

## III. ANALYSIS

### A. Constitutional Violation

Plaintiff brings a § 1983 claim against Defendant for deliberate indifference in violation of her Fourteenth Amendment rights as a pretrial detainee.[17] Plaintiff argues that Defendant was deliberately indifferent to her medical needs.[18] Defendant counters that he did not have notice of Plaintiff's medical emergency on the morning of May 17, 2020, and thus is entitled to judgment as a matter of law.[19]

The Court agrees with Defendant. The facts of this action do not amount to deliberate indifference. There is no doubt that this case is an abject tragedy. However, "[d]eliberate indifference is an extremely high standard to meet." *Dyer*, 964 F.3d at 380 (quoting *Domino*, 239 F.3d at 756). "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer*, 964 F.3d at 380 (quoting *Domino*, 239 F.3d at 756); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (recognizing that an official acts with deliberate indifference only if he knows of the risk and "disregards that risk").

It is not enough to show that there was "a grossly negligent response to a substantial risk of serious harm." *Dyer*, 964 F.3d at 381. "And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference."

---

[17] Pl.'s Second Am. Compl. ¶¶ 123–129, ECF No. 102.
[18] *Id.*
[19] *See* Def.'s Mot. Summ. J. 1, ECF No. 124.

9

*Domino*, 239 F.3d at 755 (internal quotation marks and citation omitted). Rather, a "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Applying these principles to the undisputed facts of this action, Defendant did not see the email prior to Plaintiff giving birth. Defendant himself testified to this fact.[20] Because Defendant did not see the email it was impossible for him to "actually dr[aw] th[e] inference" about Plaintiff's medical condition. *Dyer*, 964 F.3d at 380. Further, without seeing the email about Plaintiff, it was similarly impossible to "disregard[] th[e] risk" to Plaintiff. *Gobert*, 463 F.3d at 346.

Plaintiff argues that Defendant's "deposition testimony by itself is inadequate to overcome the presumption that Dr. Shaw had notice" of the May 17, 2020, email.[21] Plaintiff attempts to hold Defendant liable under a theory of constructive knowledge to prove that Defendant "knew that Chasity was complaining of abdominal cramps prior to when she had her baby."[22]

Neither of these arguments are sufficient. First, as it relates to the deposition testimony, Plaintiff does not dispute the material facts of this case.[23] Second, Plaintiff's theory of constructive knowledge is novel as applied to doctors. Plaintiff cites cases in business disputes where courts have applied the "mailbox rule" but none in a deliberate indifference context.[24] Thus, Defendant's assertion of qualified immunity would be granted because this principle is not clearly established. Even assuming that the "mailbox rule" would apply to give Defendant notice, there is no evidence

---

[20] Def.'s App. Supp. Mot. Summ. J. (Shaw Dep.) 75:17-76:10, App. 88, ECF No. 126.
[21] Pl.'s Resp. 4, ECF No. 128.
[22] *Id.*
[23] Pl.'s Br. Supp. Mot. Summ. J. 2, ECF No. 120 ("[T]here is no genuine dispute as to the material facts.")
[24] *See* Pl.'s Resp. 5, ECF No. 128 (citing *Gezu v. Charter Commc'ns*, 17 F.4th 547, 553–54 (5th Cir. 2021); *Krohn v. Spectrum Gulf Coast, LLC*, No. 3:18-CV-2722-S, 2019 WL 4572833, *3 (N.D. Tex. Sept. 19, 2019); *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007)); *Nart v. Open Text Corp.*, No. A-10-CV-870-LY-AWA, 2013 WL 442009, *2 n.4 (W.D. Tex. Feb. 5, 2013)).

that Defendant actually drew the inference of Plaintiff being in labor or disregarded the risk to her. *See Dyer*, 964 F.3d at 380 (requiring "the official actually drew that inference"); *Gobert*, 463 F.3d at 346 (recognizing that the prison official "disregards that risk"). Accordingly, because there are no disputed facts, as a matter of law, Defendant is entitled to judgment.

### B. Clearly Established Law

Even if the facts established a constitutional violation, Defendant's actions were not clearly established as a violation at the time of the incident. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (recognizing that it is a plaintiff's burden to "identify a case that put[s] [an officer] on notice that his specific conduct was unlawful"). Plaintiff does not even attempt to identify a case with similar facts that put Defendant on notice.

"[T]he Supreme Court has repeatedly instructed that clearly established law is not to be defined at a high level of generality. This is particularly true in recent years." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021). In *Mullenix v. Luna*, the Supreme Court emphasized that "[t]he relevant inquiry is whether existing precedent placed the conclusion that [officers] acted unreasonably in these circumstances 'beyond debate.'" 577 U.S. 7, 13–14 (2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). There, the Court concluded that "[c]ases decided by the lower courts . . . have not clearly established that deadly force is inappropriate in response to conduct like [the suspect's]." *Id.* at 16. Finding no precedent that "squarely govern[ed]," the Court explained that "qualified immunity protects actions in the hazy border between excessive and acceptable force." *Id.* at 15, 18 (internal quotation marks and citation omitted). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal

11

doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 12 (second alteration in original) (quoting *Saucier*, 533 U.S. at 205).

Plaintiff argues that Defendant's standing medical orders and deposition testimony are insufficient for qualified immunity. Plaintiff also argues that *Easter v. Powell* put Defendant on notice.[25] 467 F.3d 459 (5th Cir. 2006). But the Court discussed *Easter* as a similar case when it was alleged that Defendant "knew" of Plaintiff's abdominal cramps and "took no action in response to the email."[26] While *Easter* establishes that doctors cannot "turn a deaf ear," the case does not support a constructive notice standard for deliberate indifference cases. *Id.* at 463–64.

As mentioned above, those cases cited by Plaintiff for a presumption of notice are too dissimilar to clearly establish that Defendants' conduct here was illegal. None of those cases involved doctors receiving charts to put them on notice of a patient's acute change in medical condition. *See, e.g.*, *Gezu v. Charter Commc'ns*, 17 F.4th 547, 553-54 (5th Cir. 2021) (applying a presumption of notice to an arbitration agreement); *Krohn v. Spectrum Gulf Coast, LLC*, No. 3:18-CV-2722-S, 2019 WL 4572833, *3 (N.D. Tex. Sept. 19, 2019) (same); *Nart v. Open Text Corp.*, No. A-10-CV-870-LY-AWA, 2013 WL 442009, *2 n.4 (W.D. Tex. Feb. 5, 2013)) (applying the presumption of notice to a deposition transcript).

Under the Supreme Court's demanding standard, in which "existing precedent [must] place[] the conclusion that [the doctor] acted unreasonably in these circumstances 'beyond debate,'" the Court concludes that on May 27, 2022, the law was not clearly established that Defendant's conduct, namely, failure to check his email, was illegal. *Mullenix*, 577 U.S. at 14 (quoting *al-Kidd*, 563 U.S. at 741). Therefore, Defendant is also entitled to qualified immunity.

---

[25] *Id.* at 9.
[26] Pl.'s Br. Supp. Mot. Relief J. 5, ECF No. 93.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** Defendant's Motions for Summary Judgment. ECF No. 124. The Court **DENIES** Plaintiff's Motion for Partial Summary Judgment, ECF No. 119. Plaintiff's claim against Defendant is hereby **DISMISSED with prejudice**. The Court also **DENIES as moot** all other pending motions. ECF Nos. 116, 122.

**SO ORDERED** on this **1st day** of **July, 2025**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**